**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

<table>
<tr><td>

**CASSANDRA DAWDY,**

    **Plaintiff,**

    **v.**

**BORDERLANDERS INC. and
YODGORBEK AZIMOV,**

    **Defendants.**

</td><td>

**Case No. 6:24-cv-01195-HLT**

</td></tr>
</table>

## <u>MEMORANDUM AND ORDER</u>

This case arises from a vehicle accident. Defendant Yodgorbek Azimov was driving a tractor-trailer on I-70 at night for his employer, Defendant Borderlanders Inc. Azimov swiped the back end of Plaintiff Cassandra Dawdy's vehicle while trying to change lanes to pass Plaintiff on the highway. Plaintiff claims Azimov inattentively operated the commercial motor vehicle, followed too closely, and made an unsafe lane change, which caused the accident and injury to Plaintiff. Plaintiff brings this negligence suit against Azimov and Borderlanders. The Court has diversity jurisdiction.

Defendants move for summary judgment on Counts II and III. Doc. 46. The upshot is that portions of Counts II and III survive summary judgment. Count II survives because a reasonable jury could find that the failure to train Azimov had a causal connection to the collision. Count III also survives to the extent Plaintiff asserts a statutory cause of action under K.S.A. § 66-176 based on violations of Kansas's common carrier regulations. The Court denies in part and grants in part Defendants' motion.

## I.    BACKGROUND[1]

Plaintiff and Azimov were involved in a motor vehicle collision on I-70 in Kansas in November 2023. Plaintiff was driving a Chevy Captiva. Azimov was operating a tractor-trailer in the course and scope of his employment with Borderlanders. Borderlanders is a motor carrier. Borderlanders's CEO and corporate representative is Farrukhion Akramov.

Azimov was traveling in the right lane of I-70 at approximately 67 to 68 mph before the collision, which is below the posted speed limit of 70 mph. Plaintiff was ahead of Azimov in the right lane. It was dark but clear and flat with light traffic. Azimov testified that he did not see Plaintiff's vehicle until the collision. Plaintiff had been parked on the right shoulder. Her vehicle's lights were working and on. She was in the right lane of I-70 for approximately 30 seconds to a minute before the collision occurred, traveling approximately 55 miles per hour. Azimov was attempting to change lanes when he hit Plaintiff's car.

Azimov holds a valid Class A Commercial Driver's License (CDL).  He has held a valid Class A CDL since 2017 or 2019. It is unclear how long he had been driving commercial vehicles at the time of the accident, but it was somewhere between three and six years. His driving record contained only one prior moving violation, which was a warning for a lane change in California.

Azimov was rested and not under the influence of any medications or alcohol at the time of the accident. He can speak some English but cannot write in English. Azimov testified that he knows road signs and can understand them. He signed Borderlanders's English Language Policy pursuant to Federal Motor Carrier Safety Regulation (FMCSR) § 391.11(b)(2), and thereby certified that he could read and speak English sufficiently to converse with the general public,

---

[1]    For purposes of summary judgment, the following facts are uncontroverted or recited in the light most favorable to the nonmoving party.

understand highway traffic signs and signals in English, respond to official inquiries in English, and make entries on reports and records in English. But Azimov could not read the actual policy at his deposition.

Azimov applied to work at Borderlanders in October 2021. Borderlanders did not interview him, and no one asked him questions about his application. Azimov was hired and placed on the road the day after he applied. Borderlanders gave Azimov a Borderlanders handbook and a folder with information. But everything was written in English, and no one at Borderlanders explained the documentation to him or discussed the handbook with him.

Azimov testified that Borderlanders did not provide him with any training on how to drive a commercial motor vehicle, put him through an orientation program, instruct him on safety principles or regulations, or give him a road test. Azimov also did not have a supervisor.

Borderlanders's CEO Akramov tells a different story. He testified as corporate representative that Borderlanders provides safety orientation and onboarding sessions. These include all safety-related topics and company policies for its drivers. He stated that Borderlanders always complies with all the regulations and gave Azimov good safety training related to unsafe driving, defensive driving, and anything related to safety. The training was performed in English.

Akramov also testified that Borderlanders trained Azimov on road-driving. He said that the safety department verified the information in Azimov's application. And he testified that Borderlanders always does training related to unsafe driving, including how to safely change lanes. Borderlanders trains its drivers on managing space, approximating distance, and following too closely.

Borderlanders has policies related to training and safety. Its policy at the time Azimov was hired was to orient and train drivers on safety expectations before dispatch. Borderlanders's new

hires must complete accident prevention training, which includes topics such as safe merging, passing, and lane changing. The Borderlanders Handbook covers maintaining a safe and adequate following distance and being prepared for possible roadway obstructions. It instructs that drivers should maintain nighttime speed that allows them to stop within the distance illuminated by headlights. Borderlanders's policy is to train drivers on safe nighttime driving techniques. This includes training drivers to use extra caution when relying on headlights.

Borderlanders's safety compliance specialist reviewed Azimov's file and confirmed it contained a valid Class A CDL and a valid medical card. She could not locate documentation of employment verifications.

## II.    STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts applying this standard view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation and citation omitted).

### III.    ANALYSIS

Plaintiff asserts three claims. Count I is a vicarious liability negligence claim against Azimov and Borderlanders based on respondeat superior. This claim is not at issue in the motion. The remaining claims are at issue. Count II is a direct negligence claim against Borderlanders. Count III is a statutory claim under K.S.A. § 66-176 against Borderlanders, which Plaintiff refers to as negligence per se.

### A.    Direct Negligence Claim Against Borderlanders (Count II)

Count II is a direct negligence claim against Borderlanders for its own actions in hiring, (not) training, (not) supervising, and retaining Azimov. The elements of negligence are well-known: (1) duty; (2) breach of that duty; (3) a causal connection between the breach and the resulting injury; and (4) injury. *Smith v. Kan. Gas Serv. Co.*, 169 P.3d 1052, 1057 (Kan. 2007). The parties dispute the third element.

Causation has two components: causation in fact and legal causation. *Granados v. Wilson*, 523 P.3d 501, 515 (Kan. 2023). The causation-in-fact component requires a plaintiff to present evidence from which a jury can conclude that the plaintiff's injuries would not have occurred but for the defendant's conduct. *Id.* The legal-causation component requires proof of foreseeability. *Id*. "[T]he distinction between 'causing an accident' and 'contributing to an accident' is a distinction without a difference. . . . An act of negligence which contributes to an accident must, of necessity, have at least a part in causing the accident." *Burnette v. Eubanks*, 425 P.3d 343, 353 (Kan. 2018) (citation and internal quotation marks omitted). But Kansas courts do not impose liability when negligence creates a condition but the claimed harm is not the natural and probable consequence of that negligence. *See id.* at 348; *Hale v. Brown*, 197 P.3d 438, 496-97 (Kan. 2008).

Plaintiff's theory is that Borderlanders put Azimov on the road the day after he applied for the job. Borderlanders did not give him an orientation, which would ordinarily address safe driving skills including merging, changing lanes, passing, and adjusting speed at night. Borderlanders had a handbook (in English), but it did not discuss the handbook or policy with Azimov. Plaintiff argues that Borderlanders's failure to follow its own training policies contributed to the collision and contends that its failure to train and instruct foreseeably created a risk of harm.

This is sufficient to survive summary judgment. Plaintiff has presented evidence from which a reasonable jury could find that the collision would not have occurred had Borderlanders followed its own policies and given Azimov safety training and instruction and verified that he could understand them. Plaintiff has also presented evidence that it was foreseeable that Borderlanders's failure to train would result in a vehicle accident.

Borderlanders tries to avoid this outcome. It contends that it did train Azimov, and it characterizes Plaintiff's other complaints as mere administrative deficiencies that lack any causal nexus to the accident. Borderlanders argues that at most its failures to verify Azimov's prior employment or English proficiency are background conditions that did not cause the collision. Borderlanders centers its argument on a lack of proximate cause between the collision and Azimov's ability to read or write English or Borderlanders's failure to interview him or check his prior employment.

Whether Borderlanders trained Plaintiff is a disputed question of fact. And the Court's understanding is that so-called "administrative deficiencies" (e.g., checking prior employment) are mere background information (versus standalone theories) given the tenuous causal relationship between them and Plaintiff's injury. The gravamen of the claim is that Borderlanders failed to train

Azimov or ensure he understood any training, handbook, or safety orientation he received.[2] Plaintiff has presented evidence from which a reasonable jury could find that the collision would not have occurred had Borderlanders followed its own policies and given Azimov safety training and instruction and verified that he could understand them. Plaintiff has also presented evidence that it was foreseeable that Borderlanders's failure to train and verify would result in a vehicle accident. A jury must decide whether Azimov received training and whether any lack of training contributed to the accident. Plaintiff may take this theory of Count II to trial.[3]

   **B.     K.S.A. § 66-176 (Count III)**

Plaintiff contends in Count III that Borderlanders is liable under K.S.A. § 66-176 for violating federal motor carrier safety regulations, state regulations, and state statutes. Specifically, Plaintiff contends that Borderlanders violated 49 C.F.R. § 390.3(e)(1)-(2); K.A.R. § 82-4-3f; 49 C.F.R. § 392.3; K.S.A. § 66-1,129; K.A.R. § 82-4-3h; and K.S.A. § 8-1548(a).[4] Section 66-176 states:

---

[2]   Plaintiff has produced no evidence that Azimov's inability to read a sign or understand a warning in English directly caused the collision. Evidence of this type could certainly provide stronger causal connection. But causation can often be a fact issue, even when more attenuated as in this case.

[3]   Kansas has declined to recognize failure to train and failure to supervise as separate causes of action. *See Reardon v. King*, 452 P.3d 849, 857 (Kan. 2019). Plaintiff's theories for direct negligence are just that: theories on which a general direct negligence claim may be based. Employers in Kansas owe a third party a single duty of reasonable care. *Id.*

[4]   The parties confusingly call this a "negligence per se" claim. But they come by this confusing terminology honestly. Kansas courts have in the past referred to certain types of statutorily created causes of action previously unknown at common law as "negligence per se." *See, e.g.*, *Schlobohm v. United Parcel Serv., Inc.*, 804 P.2d 978, 981 (Kan. 1991), *overruled by Shirley v. Glass*, 308 P.3d 1 (Kan. 2013); *Dietz v. Atchison, Topeka, and Santa Fe Ry. Co.*, 823 P.2d 810, 814-15 (Kan. Ct. App. 1991). A claim under § 66-176 for a violation of common carrier regulations is one example. *See Dietz*, 823 P.2d at 814-15. The Kansas Supreme Court's opinion in *Shirley v. Glass* casts (in this Court's view) considerable doubt on the continued use of the term in this way. *See Shirley*, 308 P.3d at 5-7. *Shirley* also suggests an effort to align the terminology in Kansas with the conventional view that negligence per se is simply a theory of breach based on the violation of a statute or regulation that sets the standard of ordinary care. *See id.*

   In any event, in this case, it is clear Plaintiff is advancing a K.S.A. § 66-176 claim in Count III. Plaintiff is not pursuing a separate negligence claim in Count III for which the theory of breach is the violation of common carrier regulations. Plaintiff's Count III does not appear to be based on a common law theory of negligence nor does it appear to be based on any other common law theory of liability. Plaintiff's Count III is rooted solely in

> Any public utility or common carrier which violates any of the provisions of law for the regulation of public utilities or common carriers shall forfeit, for every offense, to the person, company or corporation aggrieved thereby, the actual damages sustained by the party aggrieved, together with the costs of suit and reasonable attorney fees, to be fixed by the court.

K.S.A. § 66-176.

Borderlanders seeks summary judgment and contends that K.S.A. § 66-176 applies only when a motor carrier violates a law <u>for</u> the regulation of common carriers and does not cover violations of general traffic laws (e.g., K.S.A. § 8-1548(a)). Plaintiff disagrees and argues that the statutory cause of action exists when a motor carrier violates <u>any</u> law that has the effect of regulating common carriers. Doc. 48 at 19. Put simply, they dispute the breadth of the statute.

Borderlanders is correct based on the plain text of § 66-176. *N. Nat. Gas Co. v. OKEOK Field Servs. Co.*, 296 P.3d 1106, 1115 (Kan. 2013). The plain text of the statute is that it applies to violations of any of the provisions of law <u>for the regulation of</u> common carriers. The ordinary meaning of "for" indicates purpose. *See for*, MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-webster.com/dictionary/for (last visited June 27, 2026). Thus, the statutory cause of action is available when a motor carrier violates a law that exists for the purpose of regulating common carriers.

Plaintiff's position is inconsistent with the statutory language because it ignores words in the statute or adds words to the statute; either way it violates a well-accepted canon of construction. *See State v. Sedillos*, 112 P.3d 854, 858 (Kan. 2005) ("The court should avoid interpreting a statute in such a way that part of it becomes surplusage."); *Lamie v. U.S. Trustee*, 540 U.S. 526, 538

---

the cause of action provided in K.S.A. § 66-176. It is therefore a statutory claim. And the Court will henceforth refer to it as one to avoid deepening (or furthering) the confusion.

(2004) (explaining that courts do not add new words into statutes). For example, one could arrive at Plaintiff's interpretation by ignoring "for the regulation of common carriers." Or one could arrive at Plaintiff's interpretation by adding any of the following phrases: "any of the provisions of law to which common carriers are subject," or "any of the provisions of law that regulate common carriers," or even "any of the provisions of law that have the effect of regulating common carriers."

Plaintiff argues that *Dietz v. Atchison, Topeka & Santa Fe Ry. Co.* supports its position. 823 P.2d 810. Plaintiff is wrong. *Dietz* is a wrongful death action that the Kansas Court of Appeals decided in 1991. *Dietz* involved a truck driver who was hauling hazardous materials. The driver struck a train when he failed to stop at a train crossing in violation of a Kansas statute that incorporated a federal stop-look-and-listen requirement for hazardous-materials haulers at railroad crossings. *Dietz* applied K.S.A. § 66-176 and awarded attorney's fees because the driver violated a provision of law specifically for the regulation of common carriers. *Dietz* did not hold that K.S.A. § 66-176 is triggered every time a common carrier violates a general traffic law. *See Downing v. Thompson*, 2026 WL 632278, at *3 (D. Kan. 2026).

Plaintiff's position is also inconsistent with cases from this district. Several cases have held that K.S.A. § 66-176 is unavailable when the plaintiff failed to identify a specific violation of Chapter 66. *See Drake v. Old Dominion Freight Line, Inc.*, 2016 WL 1328941, at *4-5 (D. Kan. 2016); *see also Downing*, 2026 WL 632278, at *4; *Chavez-Matchie v. Jack Cooper Transp. Co.*, 2017 WL 2378334, at *3 (D. Kan. 2017); *Kobilan v. Colter*, 2017 WL 4843292, at *3 (D. Kan. 2017). The rationale in these cases rejects Plaintiff's position and supports the Court's determination that the plain language of K.S.A. § 66-176 does not impose liability for a motor carrier's violation of general traffic laws as opposed to laws for the regulation of common carriers.

The Court must now apply the plain text to Count III. K.S.A. § 8-1548 cannot support a statutory claim under K.S.A. § 66-176. It is a general traffic law and not one for the regulation of common carriers. But Kansas has incorporated 49 C.F.R. § 390.3(e)(2) into its own law through K.A.R. § 82-4-3f.[5] This theory of Count III survives for trial. The Pretrial Order also identifies 49 C.F.R. § 392.3(e)(1), but this is a general provision about the FMCSRs and does not preserve the entire body of otherwise undefined violations. The Pretrial Order identifies 49 C.F.R. § 392.3 and K.A.R. § 82-4-3h, but it is unclear how this theory applies to Borderlanders and, regardless, there is no evidence from which a reasonable jury could find that Azimov was ill or fatigued. This theory does not survive for trial. Lastly, K.S.A. § 66-1,129 is an enabling statute and not a substantive statute.[6]

## IV.    CONCLUSION

The parties agree that a jury must resolve Count I. The Court finds that Count II survives for trial on the theory that Borderlanders failed to train Azimov or ensure he understood any training, handbook, or safety orientation he received. The Court also finds that Count III survives for trial based on a violation of 49 C.F.R. § 390.3(e)(2) incorporated into Kansas law through K.A.R. § 82-4-3f. The Court questions whether the surviving claims overlap and encourages the parties to analyze this issue as they craft a verdict form.

---

[5]    The Court recognizes that the FMCSRs themselves do not provide a private right of action for personal injury claims. *Drake*, 2016 WL 1328941, at *3-4; *see also Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("[I]t is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress."); *Downing v. Thompson*, 2025 WL 3652968, at *3 (D. Kan. 2025); *Lopez v. Univ. of the Sw.*, 2024 WL 68531, at *3 (D.N.M. 2024) ("Courts within this district and outside the district have consistently found that the FMCSR does not create a private right of action."). But, crucially, Kansas has incorporated the FMCSRs into its own regulatory scheme for the regulation of common carriers. Neither party explains why this is not a viable pathway for a § 66-176 statutory cause of action.

[6]    Plaintiff attempts to identify additional violations in her opposition. These do not appear to be preserved in the Pretrial Order and are not part of the case. It is well-established that a party can't expand its preserved claims via an opposition to summary judgment. *Hullman v. Bd. of Trs. of Pratt Cmty. Coll.*, 950 F.2d 665, 667 (10th Cir. 1991).

THE COURT THEREFORE ORDERS that Defendants' motion for summary judgment (Doc. 46) is DENIED IN PART and GRANTED IN PART. Plaintiff may proceed at trial on Counts I, II, and III.

IT IS SO ORDERED.

Dated: July 2, 2026                                      /s/ *Holly L. Teeter*
                                                         HOLLY L. TEETER
                                                         UNITED STATES DISTRICT JUDGE